UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES HOGAN,<br><br>                Plaintiff,<br><br>   v.<br><br>IDAHO STATE BOARD OF CORRECTIONS; DEBRA FIELD; DAVID MCCLUSKY; CINDY WILSON; IDAHO DEPARTMENT OF CORRECTION; HENRY ATENCIO[1]; JEFF ZMUDA; SHANNON CLUNEY; HOWARD YORDY; GARRETT COBURN; JEFF KIRKMAN; DAN COPELAND; and JOSH TEWALT,<br><br>                Defendants. | Case No. 1:16-CV-00422-CWD<br><br>**MEMORANDUM DECISION AND ORDER (DKTS 22; 29; 31)** |

Pending before the Court are three motions: Defendants' Motion for Summary Judgment (Dkt. 22), and Plaintiff's motions to strike (Dkt. 29; Dkt. 31.) The motions are ripe for the Court's consideration. All parties have consented to the jurisdiction of a

---

[1] Henry Atencio is now the Director of the Idaho Department of Corrections. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Henry Atencio is substituted for Kevin Kempf as a defendant in this suit.

**MEMORANDUM DECISION AND ORDER - 1**

United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. 16.) In the interest of avoiding delay, and because the Court conclusively finds the decisional process would not be significantly aided by oral argument, the motions will be decided on the record and without oral argument. Dist. Idaho L. Rule 7.1(d). As discussed more fully below, the Court will deny Defendants' motion for summary judgment and will deny Plaintiff's motions to strike.

## FACTUAL BACKGROUND

Plaintiff James Hogan is a prisoner in the custody of the Idaho Department of Correction (IDOC), currently incarcerated at the Idaho State Correctional Institution (ISCI). Hogan alleges his religious beliefs, as a practicing Muslim, require him to wear a full-length beard and a kufi at all times. (Dkt. 3 at 5.) A kufi is a knit skullcap. *Id.*

IDOC adopted a standard operating procedure (SPO) "to provide guidance and direction for recognized religious activities, and provide procedures for reviewing inmate requests for accommodations of religious activities not covered" by the SOP. Religious Activities Standard Operating Procedure, 403.02.01.001 *et seq.*, Version 8 (May 1, 1996) (Religious Activities SOP). The Religious Activities SOP permits an inmate to keep a beard of up to one-inch if grown for religious purposes. SOP 403.02.02.001. IDOC has adopted also an SOP governing religious property. Religious Property Standard Operating Procedure, 320.02.01.001, *et seq.*, Version 8 (Jan. 9, 2010) (Religious Property SOP). The Religious Property SOP permits an inmate to wear a head covering, such as a kufi, during religious ceremonies and while in his or her cell.

**MEMORANDUM DECISION AND ORDER - 2**

The dispute in this case arose when Hogan requested permissions exceeding those set forth in the Religious Activities and Religious Property SOPs. Hogan asked to grow a fist-length beard of four inches, and permission to wear his kufi throughout the facility, at all times. IDOC staff denied these requests as inconsistent with the SOPs.

## PROCEDURAL BACKGROUND

On September 15, 2016, Hogan filed a *pro se* prisoner complaint against Defendants alleging a violation of his rights to exercise religious beliefs, as protected by the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.*[2]

In his Complaint, Hogan seeks declaratory relief that Defendants violated RLUIPA by denying his requests, and injunctive relief for himself and other similarly-situated prisoners permitting them to grow and keep a fist-length beard of four-inches, and permitting such inmates to wear a kufi throughout prison facilities at all times. Hogan also sought reasonable costs, attorney fees, and monetary damages.

On December 9, 2016, the Court issued its Initial Review Order, finding Hogan stated plausible RLUIPA claims, but that he could not continue to pursue his claim for monetary damages because money damages not recoverable in RLUIPA actions. (Dkt. 8.) On November 13, 2017, Defendants filed the instant motion for summary judgment.

---

[2] Suit is filed against Defendants in their official capacities and against their successors in office.

Prior to filing his Complaint, Hogan pursued administrative remedies with IDOC staff: On June 27, 2016, he filed an Offender Concern Form (Dkt. 3-1 at 2); and on July 8, 2018, an Idaho Department of Correction Grievance Form. *Id.* at 3-4.

**MEMORANDUM DECISION AND ORDER - 3**

(Dkt. 22.) On December 4, 2017, Hogan filed his response. (Dkt. 25.) Defendants filed a reply on December 22, 2017.[3] (Dkt. 27.) Hogan filed a sur-reply on January 8, 2018, (Dkt. 28) and an additional sur-reply on January 17, 2018. (Dkt. 30.)

Hogan filed the instant motions to strike on January 8, 2018, and January 17, 2018, respectively. (Dkt. 29; Dkt. 31.) The Court notes, however, that Hogan's motions, although styled as motions "to strike" are not motions to strike in substance. Instead, the motions are additional sur-replies in opposition to Defendants' motion for summary judgment. In fact, the two motions are exact copies of one another, with the exception that the first motion (Dkt 29), is missing page 7. Plaintiff's first-filed sur-reply (Dkt. 28), is also an exact copy missing a page that should have appeared at page 7. However, Plaintiff's second-filed sur-reply, (Dkt. 30) includes the missing page 7. Therefore, the Court will consider the contents of Plaintiff's second-filed sur-reply (Dkt. 30) only and will deny the two motions to strike as moot.

## STANDARDS OF LAW

1. **Motion for Summary Judgment**

Federal Rule of Civil Procedure 56 directs a Court to "grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal

---

[3] Defendants' reply included a request that the Court strike certain statements in the Declaration filed by Hogan with his response to the motion for summary judgment. Defendants assert that Hogan introduced bare, conclusory and hearsay statements in his Declaration to support his opposition to the motion for summary judgment. However, the Court did not consider these statements in its analysis of the merits of the motions before the Court. Therefore, the Court will not reach the merits of Defendants' evidentiary objections at this time. Such objections are preserved for further proceedings.

**MEMORANDUM DECISION AND ORDER - 4**

purposes of summary judgment "is to isolate and dispose of factually unsupported claims…." *Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment…" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, if there is no genuine dispute as to any material fact, the motion is proper. Material facts are facts "that might affect the outcome of the suit." *Anderson* at 247-48.

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*, 477 U.S. at 323). "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id.* The non-moving party must go beyond the pleadings and show through affidavits, interrogatories, depositions, or admissions on file that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

The party bearing the burden of proof at trial "must establish beyond controversy every essential element of its ... claim." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). A party who does not have the burden "may rely on a showing

**MEMORANDUM DECISION AND ORDER - 5**

that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact." Fed. R. Civ. P. 56(c)(1)(B) (advisory committee's note.) As a general rule, the "party opposing summary judgment must direct attention to specific triable facts" supportive of the claims that have been made. *S. Cal. Gas Co.*, 336 F.3d at 889.[4] [T]here must be evidence on which the jury could reasonably find for the [non-moving party]. *Anderson*, 477 U.S. at 252.

**2.     Religious Land Use and Institutionalized Persons Act**

RLUIPA applies to entities receiving federal funding or financial assistance, including prisons like ISCI. *See Sossamon v. Texas*, 131 S. Ct. 1651, 1655 (2011.) The statute provides prison inmates with protection from substantial burdens on religious exercise:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, … even if the burden results from a rule of general applicability, unless the government establishes that imposition of the burden on the person –
>
> (1)     is in the furtherance of a compelling governmental interest; and
>
> (2)     is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

A RLUIPA claim is analyzed under a burden shifting framework. The inmate bears the burden initially to show that the governmental action constitutes a substantial

---

[4] An exception to this rule exists when cross-motions for summary judgment are filed. In such cases, the Court must independently review the record for issues of fact. *Fair Housing Council of Riverside Co., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Here, Hogan did not file a cross motion.

**MEMORANDUM DECISION AND ORDER - 6**

burden on the exercise of the inmate's sincerely held religious beliefs. *Warsoldier v. Woodfort*, 418 F.3d 989, 994 (9th Cir. 2005). A substantial burden is one that imposes "a significantly great restriction or onus upon such exercise." *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). If the plaintiff satisfies this burden, the government must "show that its action or policy (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that interest." *Holt*, 135 S.Ct. at 783.

## DISCUSSION

The IDOC Defendants seek summary judgment on two grounds. First, Defendants contend Hogan cannot demonstrate that IDOC policies substantially burdened his religious practice based on the facts in the record. Defendants assert further that, even if the Court finds there are sufficient facts to support Hogan's RLUIPA claims, undisputed evidence in the record demonstrates the IDOC policies further compelling governmental interests by the least restrictive means. Second, Defendants contend Hogan failed to allege evidence of affirmative acts sufficient to establish RLUIPA claims against individually named Defendants Debra Field, David McClusky, Cindy Wilson, Kevin Kempf, Jeff Zmuda, Shannon Cluney, Jeff Kirkman, Dan Copeland, and Josh Tewalt.

Hogan opposes the motion on several grounds. First, he asserts there are facts in the record to support his claim that that IDOC's policies place significant pressure on him to abandon his sincerely held religious beliefs. He argues that IDOC's interests in security and inmate identification are not threatened by his requests, and that the policies in the SOPs are not the least restrictive means to further such interests. Second, Hogan

**MEMORANDUM DECISION AND ORDER - 7**

argues that he did allege sufficient facts against the individually named Defendants at issue. The Court will address the merits of each argument in turn.

1. **RLUIPA Claims**

    A. *Sincerity of Belief and Substantial Burden*

    Defendants contend that IDOC's policies do not substantially burden Hogan's religious beliefs that he must grow a fist-length beard of four inches and wear a kufi at all times. The thrust of Defendants' argument is that Hogan did not actually state, explicitly, in his Complaint that his sincerely held religious beliefs *require* him to grow his beard to four inches and *require* him also to wear a kufi at all times. Instead, they assert, Hogan "simply asked to grow a fist-length beard and wear his kufi throughout the institution." (Dkt. 22-7 at 16.) The Defendants' own language is perhaps the best illustration of their argument:

    > While he must grow a beard, nothing present in the record supports his bare assertion that he must grow it to any length. Additionally, nothing in the record requires Plaintiff to wear his head-covering at times other than prayer. Aside from Plaintiff's claim that these practices are "common" in the practice of the Muslim faith, the record is silent as to whether these specifically requested practices are consistent with the community of believers and practitioners.

    (Dkt. 27 at 3.)

    However, RLUIPA specifically provides that religious exercise includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). The statute thus "bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005). Therefore, contrary to Defendants' arguments, courts must not

**MEMORANDUM DECISION AND ORDER - 8**

attempt to test the sincerity of a belief by "determin[ing] the place of a particular belief in a religion or the plausibility of a religious claim." [5] *Emp't Div., Dep't Human Res. of Ore., v. Smith*, 494 U.S. 872, 887 (1990). Additionally, Courts may not question the validity of a prisoner's interpretation of religious creeds. *Nance v. Miser*, 700 F. App'x 629, 631 (9th Cir. 2017) (citing *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). Further, "at the summary judgment stage the judge's function is not … to weight the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986).

According to Hogan's complaint, "[i]t is held in several areas of the tenents of [his] faith in regards to the wearing of a beard." (Dkt. 3 at 6-7.) Each of the texts Hogan cites instruct him to either "leave the beard," or engage in the practice of "growing the beard." *Id.* at 6. Hogan cites other texts that set forth that mustaches must be trimmed and other specific body hair must be groomed within certain timeframes. He uses these citations to illustrate his belief that the tenets of his faith, as set forth in such instructions, require him to grow his beard and not cut it.

Although Hogan does not provide citations to religious texts to support his belief that he must wear a kufi at all times, he expressly states that his faith requires him to wear his kufi all day. (Dkt. 3 at 5, 7.) This expression comports with the complaint made by Hogan in Idaho Department of Correction Grievance Form number 67876, which is

---

[5] Notably, in the findings related to the consideration of Hogan's July 8, 2016 grievance form, the appellate authority response from Warden Yordy, a Defendant in this matter, stated: "We believe the allowance of beards to 1" confirms with the religious requirements of your faith." (Dkt. 22-5 at 6.)

**MEMORANDUM DECISION AND ORDER - 9**

attached as an exhibit to Hogan's Complaint, and Defendants' Motion for Summary Judgement. (Dkt. 3-1 at 3 and Dkt. 22-5 at 6.) Therein, Hogan expressed the belief set forth in his Complaint: "My Muslim faith requires me to wear a head covering (I.E. Kufi) all day[.]" *Id.*

As set forth above, protections under RLUIPA apply to religious beliefs even if there is evidence that such beliefs are not central to the Muslim faith. Additionally, the Court may not question the validity of Hogan's interpretation of religious texts or creeds. Thus, the Court finds that Hogan provided sufficient evidence to support the assertion that it is his sincerely held belief that his faith requires such exercises. "[A]t best, Defendants have raised material questions of fact" regarding such beliefs. *See Dean v. Corr. Corp. of Am.*, 108 F. Supp. 3d 702, 711 (D. Ariz. 2014). Therefore, Defendants are not entitled to summary judgment on this issue.

Hogan must show also that IDOC's policies substantially burden such sincerely held religious beliefs. Although RLUIPA does not define substantial burden, the Ninth Circuit Court of Appeals described it as a burden that imposes "a significantly great restriction or onus." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005). A substantial burden is found also where "punishments […] coerce a religious adherent to forgo her or his religious beliefs." *Warsoldier*, 418 F.3d at 996. Further, any "outright ban on a particular religious exercise is a substantial burden" on that exercise. *Greene v. Solano Cty. Jail*, 513 F.3d 982, 988 (9th Cir. 2008); *see also Nance v. Miser*, 700 F. App'x 629, 631–32 (9th Cir. 2017). And, even where the compulsion to modify behavior may be indirect, "the infringement upon free exercise is nonetheless substantial." 108 F.

**MEMORANDUM DECISION AND ORDER - 10**

Supp. 3d at 712 (citing *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 715–16 (1981).

IDOC's Religious Activities SOP prohibits Hogan from growing a beard longer than one-inch. Thus, while the SOP permits him to grow a beard, it directly bans him from growing his beard without cutting it, or a fist-length beard of four-inches as Hogan believes his faith dictates. Additionally, if Hogan violates the policy by keeping a beard longer than one-inch, he faces disciplinary action. Similarly, IDOC's Religious Property SOP prohibits Hogan from wearing his kufi at any time other than when he is in his cell, or during a religious ceremony. Thus, while the SOP permits Hogan to wear a kufi at times, it directly bans Hogan from wearing it at all times, as he believes is required. If Hogan violates the policy by wearing his kufi at undesignated times, he will face disciplinary action. Hogan asserts that these policies put him to the daily decision of whether to adhere to his sincerely held religious beliefs or to face disciplinary action.

Defendants argue that the limitations in the Religious Activities and Religious Property SOPs are not "oppressive to a significantly great extent" and that they also do not place "significantly great restrictions" on the exercise of Hogan's religion. However, even though the policies make religious accommodations, such accommodations do not permit the specific religious beliefs identified by Hogan. *See Nance*, 700 F. App'x at 632. Additionally, the threat of punishment for a failure to adhere to policies has been held to be sufficiently coercive under both Supreme Court and Ninth Circuit precedent. *Holt*, 135 S. Ct. at 862; *Warsoldier*, 418 F.3d at 996.

**MEMORANDUM DECISION AND ORDER - 11**

Therefore, in light of the record before the Court, there is a triable issue of fact as to whether Defendants' policies substantially burden Hogan's ability to exercise his beliefs by growing a fist-length beard of four inches and wearing a kufi at all times throughout the facility. As such, Defendants' motion for summary judgment fails as to this issue.

### B. *Compelling Government Interest and Least Restrictive Means*

Defendants assert that, even if the Court finds that Hogan has presented sufficient evidence that his beliefs are sincerely-held and his beliefs are substantially burdened by the policies, they are nevertheless entitled to summary judgment because the SOPs further compelling government interests in maintaining security, identification of inmates, and reducing religious and racially-motivated violence by the least restrictive means. The Supreme Court of the United States has acknowledged that "maintain[ing] good order, security, and discipline, consistent with consideration of costs and limited resources," is a compelling government interest. *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005). Here, Hogan admits that maintaining security is a compelling government interest.

The disputed issue on this aspect of the motion is whether the Court can conclude there are no genuinely disputed material facts relating to the Defendants' contention that the government's policies are the least restrictive means of furthering interests in maintaining security, identification of inmates, and reducing religious and racially-motivated violence. "When the moving party also bears the burden of persuasion at trial, to prevail on summary judgment, it must show that 'the evidence is so powerful that no

**MEMORANDUM DECISION AND ORDER - 12**

reasonable jury would be free to disbelieve it." *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) (citing 11–56 Moore's Federal Practice–Civil § 56.13) (also citing Edison v. Reliable Life Ins. Co., 664 F.2d 1130, 1131 (9th Cir.1981)). The government "cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." "*Warsoldier*, 418 F.3d at 996.

Here, Defendants assert they have narrowly tailored both the Religious Activities SOP and the Religious Property SOPs to serve their compelling governmental interests. Defendants assert the one-inch beard policy is the least restrictive means to promote their interests in reducing contraband and interests in quickly and accurately identifying prisoners. (Dkt. 22-7 at 6-7.) They argue the Religious Property SOP serves also the interests of reducing contraband and suppressing the risk to individuals from gang-related targeting and victimization of inmates based on their faith.[6] *Id.* at 9; 16.

In response, Hogan points to other IDOC policies and practices that either resolve the compelling interests asserted or present similar issues regarding security, identification, or racially or religiously motivated threat of violence. First, Hogan points to a policy that allows prisoners to grow the hair on their head to any length—thus presenting a similar concern about concealing contraband. He asserts also that prisoners

---

[6] Notably, pursuant to the Religious Property SOP, a kufi is personal religious apparel that may only be worn during a religious ceremony or service or in the inmate's cell. (Dkt. 22-3 at 4.) Other personal apparel includes neck adornments or medallions, And, unlike a kufi, the Religious Property SOP permits neck medallions to be worn at any time, providing that they must be kept tucked underneath the inmate's shirt except during religious services or ceremonies or in the inmate's cell. *Id*.

**MEMORANDUM DECISION AND ORDER - 13**

may purchase hair dye, makeup and other items that change their appearance—thus presenting a similar issue related to prisoner identification. Second, Hogan asserts that prison officials already take multiple pictures of inmates—thus taking an additional photo of a prisoner once they have grown a beard is not out-of-the-ordinary and that such a practice would eliminate the government's concern related to inmate identification.

Third, Hogan alleges that IDOC allows prisoners to wear knitted hats to stay warm in many of the locations where he wants to wear his kufi—and that the knit hats present the same type of concern related to concealment of contraband. Fourth and finally, Hogan argues that the concerns "related to gang affiliation and protection of targeted prisoners are not based in reality." (Dkt. 25 at 10.) Hogan asserts that many prisoners have gang-related or racist tattoos that are not always covered by clothing. He states that, due to the nature of the prison environment, it is impossible to prevent prisoners from knowing the faith of others because prisoners of certain faiths attend services at specific times. Therefore, Hogan asserts wearing his kufi cap would not be any sort of giveaway, as those in the population already know his faith.

Defendants, in turn, do not present evidence that IDOC actually considered and rejected the efficacy of less restrictive measures, such as self-searches of longer beards and kufi caps, or by taking additional photographs of inmates permitted to wear beards. Instead, the record contains only assertions that denying Hogan's request to grow a fist-length beard of four-inches and to wear his kufi cap at all times throughout the facility was the least restrictive means of furthering the government's asserted interests. *See Shakur v. Schriro*, 514 F.3d 878, 890-91 (9th Cir. 2008) (where the record contained only

**MEMORANDUM DECISION AND ORDER - 14**

conclusory assertions that denying a prison a kosher diet was the least restrictive means to further cost containment interests). Thus, Defendants have not met their burden of showing they actually considered other means of achieving the asserted interests. Further, Hogan has raised questions of material fact regarding whether Defendants' policies are the least restrictive means to achieve such asserted interests. Therefore, summary judgment is inappropriate on this ground.

In sum, on this record, there is a factual dispute as to: (1) the extent Hogan's religious activities are burdened by the SOPs; (2) the extent Defendants would be burdened if they did accommodate Hogan's requests; and (3) whether there are less restrictive alternatives available. Therefore, the Court cannot conclude that summary judgment on Hogan's RLUIPA claims is appropriate.

### 2. Claims Against Individually Named Defendants

Defendants assert also that Hogan failed to identify specific actions undertaken by certain individually-named Defendants sufficient to establish their liability.[7] They argue Hogan must allege "an affirmative act by each named defendant, participation by the named defendant in another's affirmative act or an omission where the defendant is legally required to act." Defendants support their argument by citing *Johnson v. Duffy*, a 1978 case were an inmate brought suit under 42 U.S.C. Section 1983 after his earnings at an honor camp were subjected to forfeiture upon his transfer to a county jail. 588 F.2d

---

[7] Defendants concede, that under the legal standard they set forth, Hogan identified specific actions to adequately support his RLUIPA claims against Warden Yordy and Warden Coburn. (Dkt. 22-7 at 10.)

**MEMORANDUM DECISION AND ORDER - 15**

740, 744 (9th Cir. 1978). The inmate argued that he was deprived of his property without due process. *Id.* The district court granted defendants' motion for summary judgment because it found that the named defendants "had not personally participated in the forfeiture" of the inmate's earnings. *Id*. However, the Ninth Circuit reversed the district court's judgment, finding the inmate had made a prima facie showing of liability "based upon the defendants' omission to perform duties imposed by state law…" *Id.* Notably, the Ninth Circuit's holding focused specifically on the effect and meaning of the language of Section 1983 and California state law. *Id.* at 743. Therefore, this case does not provide the Court guidance to evaluate the sufficiency of claims made under RLUIPA against individual defendants.

Under RLUIPA, a "person may assert a violation as a claim … in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). A government is defined as:

(i) a State, county, municipality, or other governmental entity created under the authority of a State;
(ii) any branch department, agency, instrumentality, or official of an entity listed in clause (i);
(iii) and any other person acting under color of state law; and (B) for the purposes of sections 2000cc-2(b)[.]

42 U.S.C. § 2000cc-5(4)(A).

Thus, RLUIPA permits Hogan to sue IDOC, the Idaho State Board of Corrections (ISBC), and certain officials and employees of the entities. Further, to receive the injunctive relief available under RLUIPA, a plaintiff need not prove that a named official had personal involvement in the alleged RLUIPA violation. *Epps v. Grannis*, No.

**MEMORANDUM DECISION AND ORDER - 16**

10CV1949 BEN KSC, 2013 WL 5348394, at *3 (S.D. Cal. Sept. 23, 2013), aff'd, 606 F. App'x 329 (9th Cir. 2015). "Instead, a plaintiff must name as a defendant a government official who can appropriately respond and change policy if injunctive relief is ordered." *Id.* Therefore, the proper inquiry for the Court at this stage is whether there is no genuine issue as to any of the individually-named Defendants' lack authority to execute any possible court-ordered relief.

Hogan makes the following allegations regarding the roles of the individually-named Defendants at issue. Each has been sued in his or her official capacity:

– Debra Field, David McClusky, and Cindy Wilson: Hogan alleges these officials are responsible for the management and duties of the ISBC and oversight of IDOC. Hogan alleges that as such, they are responsible for the implementation of all rules, policies, and procedures, including SOPs.

– Keven Kempf, Director of IDOC:[8] Hogan alleges Mr. Kempf approved the Religious Activities SOP;

– Jeff Zmuda, Chief of the Division of Prisons: Hogan alleges Mr. Zmuda is responsible for ensuring that the facility staff implement the SOPs, and that Mr. Zmuda previously designated individuals to serve on the religious actions review committee[9] (RARC);

---

[8] Henry Atencio is now the Director of the IDOC. Plaintiffs contend Mr. Atencio should be substituted as the successor in officer to Mr. Kempf. The Court agrees. *See supra* note 1.

[9] The RARC is a committee that consists of at least three individuals and is responsible for making written recommendations regarding requests for new or unfamiliar religious components. Such recommendations must be submitted to the Division of Prisons Chief or designee for final decision. (Religious Activities SOP, Dkt. 22-2 at 13-14.)

The Religious Activities SOP defines the responsibilities of the Chief of the Division of Prisons to include: Designating persons to serve on the RARC, and serving as the approval authority for new and unfamiliar religious component requests. (Dkt. 22-2 at 3-4.)

**MEMORANDUM DECISION AND ORDER - 17**

- Shannon Cluney, Deputy Chief of the Division of Prisons: Hogan alleges Ms. Cluney is responsible for providing daily oversight at IDOC's prisons, including ISCI;

- Jeff Krikman, Dan Copeland, and Josh Tewalt, members of the RARC: Hogan alleges these Defendants are responsible for reviewing the facility religious activities oversight committee (RAOC) [10] recommendations, reviewing and updating the SOPs, and advising the Deputy Chief of Prisons on issues relating to religious activities. Hogan alleges that Mr. Krikman, Mr. Copeland, and Mr. Tewalt knew or should have known the Religious Activities SOP would violate Hogan's rights.

Defendants assert that the claims against these individually named defendants must be dismissed because the claims are made based on the Defendants' roles and responsibilities, and not any affirmative act or omission. Yet, as set forth above, that is exactly the basis required for asserting such claims.

For instance, Defendants point out that the claims against Debra Field, David McClusky and Cindy Wilson are made based on their management duties as members of the Board of Correction. This sort of authority is the type necessary to respond to a court order and to change policy if injunctive relief is issued. Similarly, Defendants assert the claim against Kevin Kempf, now Henry Atencio, cannot stand because it is made solely based on his appointment as the Director of Idaho Department of Correction. Yet, the authority inherent in the position of Director at IDOC is exactly the type of authority

---

[10] The RAOC is a committee of at least three individuals, as designated by a facility head, that oversees religious activities at the facility and communicates with the RARC. The RAOC meets when a request for a new or unfamiliar practice is received through an inmate Grievance Form. The RAOC provides a detailed description of whether restricting a requested practice will substantially burden an inmate's ability to exercise their beliefs, to determine if there is any compelling government interest to restrict the practice, and if so, to identify least restrictive alternatives to allow the practice as requested. (Religious Activities SOP, Dkt. 22-2 at 13-14.)

**MEMORANDUM DECISION AND ORDER - 18**

necessary to respond if injunctive relief is ordered. Again, Defendants assert the claim against Jeff Zmuda, Deputy Director of the IDOC must fail—yet it appears from the record that Mr. Zmuda may have authority necessary to respond to injunctive relief. The same reasoning lies for the remainder of the individually-named Defendants. Therefore, because Defendants failed to show that there is no genuine issue as to any of the individually named Defendants' lack of authority to execute any possible court-ordered relief, the claims against such Defendants will not be dismissed at this stage.

## CONCLUSION

The Court concludes that summary judgment on Hogan's RLUIPA claims is inappropriate, and that he has alleged sufficient facts to support his RLUIPA claims against each of the individually named Defendants in their official capacities as those with authority to respond to a court order and change or modify policy.

## **ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendants' Motion for Summary Judgment (Dkt. 22) is **DENIED**;

2) Plaintiff's Motion to Strike (Dkt. 29) is **DENIED** as moot; and

3) Plaintiff's Motion to Strike (Dkt. 31) is **DENIED** as moot.

DATED: May 15, 2018

Candy W. Dale
U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 19**